Jerry JOHNSON, et al., Plaintiffs,

v.

FUJITSU TECHNOLOGY AND BUSINESS OF AMERICA, INC., et al., Defendants.

Case No. 16–cv–03698 NC

United States District Court, N.D. California.

Signed April 11, 2017

Carl F. Engstrom, Pro Hac Vice, Jacob T. Schutz, Pro Hac Vice, Kai Richter, Pro Hac Vice, Rebekah Lynn Bailey, Nichols Kaster PLLP, Minneapolis, MN, Matthew C. Helland, Nichols Kaster, LLP, San Francisco, CA, for Plaintiffs.

Michael Delikat, Pro Hac Vice, John Desire Giansello, III, Orrick Herrington Sutcliffe LLP, New York, NY, Christopher Browne, Pro Hac Vice, Boston, MA, Roberta H. Vespremi, Morgan Lewis & Bockius LLP, San Francisco, CA, Brian Thomas Ortelere, Pro Hac Vice, Jeremy Paul Blumenfeld, Pro Hac Vice, Morgan Lewis Bockius LLP, Philadelphia, PA, Deborah Shannon Davidson, Morgan Lewis Bockius LLP, Chicago, IL, for Defendants.

## ORDER DENYING MOTIONS TO DISMISS

Re: Dkt. Nos. 71, 72

NATHANAEL M. COUSINS, United States Magistrate Judge

In this ERISA retirement plan case, former Fujitsu employees accuse Fujitsu and a plan administrator, Shepherd Kaplan, of breaching their fiduciary duties by making imprudent investments. Defendants each move to dismiss the claims in the case, arguing that they acted prudently given their knowledge at the time, and that plaintiffs can only seek recovery for three years worth of claims.

▆ The Court finds that defendants' arguments challenge the facts of plaintiffs' complaint, thus they are better suited for summary judgment. Because the Court declines to take "judicial notice" of the extensive plan documentation both parties provides, the Court limits its review to whether the facts alleged in the complaint, when taken as true, survive the plausibility standard on a motion to dismiss. The Court finds that the complaint is sufficiently pled and thus DENIES both motions to dismiss.

## I. BACKGROUND

Plaintiffs are current and former participants in the Fujitsu Group Defined Contribution and 401(k) Plan. Dkt. No. 68, First Amended Complaint ("FAC") ¶¶ 18–25. The Plan is an employee pension benefit plan, which covers eligible employees of Fujitsu and its various affiliates. FAC ¶¶ 27, 31. The Plan has had over $1 billion in assets during the relevant time period. FAC ¶ 33.

The Plan Administrative Committee and its members, one of the named defendants, is designated as an administrator of the plan. FAC ¶ 34. Additionally, the plan names the Investment Committee as a fiduciary. FAC ¶ 38. Defendant Fujitsu Technology and Business of America, Inc. is the plan sponsor as of March 1, 2014. FAC ¶¶ 40, 41. Until July 31, 2015, defendant Shepherd Kaplan LLC was designated by the Plan as the Named Investment Fiduciary. FAC ¶ 47. Individual defendants Pete Apor, Belinda Bellamy, and Sunita Bicchieri are Fujitsu employees responsible for the administration and operation of the Plan. FAC ¶¶ 44–46.

Plaintiffs allege that the Fujitsu/Shepherd Kaplan plan was the most expensive "mega plan" in the country in 2013 and 2014, with expenses three times higher than average for similarly-sized plans with over $1 billion in assets. FAC ¶¶ 9, 81. Recordkeeping expenses were five to ten times higher than fees for similarly-sized plans during the period in question. FAC ¶¶ 84–94. Fujitsu approved substantial payments over $100,000 per year to itself for overseeing the plan. FAC ¶ 95. Plaintiffs allege that Fujitsu failed to obtain the least expensive share class of the mutual funds offered within the plan. FAC ¶¶ 96–99, 120. In addition, Fujitsu failed to investigate or consider other investment alternatives, even though the mutual funds in the plan were up to 35 times more expensive than comparable funds in the same investment style. FAC ¶¶ 11–12.

As to Shepherd Kaplan, plaintiffs allege that Fujitsu mismanaged the Plan's target-date funds by retaining SK to design those funds, and by allowing SK to populate the Plan with target-date funds that were imprudent in light of their cost, performance, and underlying investments. FAC ¶¶ 128–143.

Plaintiffs filed this class action lawsuit on June 30, 2016. Dkt. No. 1. After an initial round of briefing on motions to dismiss, plaintiffs amended the complaint. Dkt. No. 68. Included with the complaint is the Plan document, Exh. A, the April 2012 Plan amendment, Exh. B., a further

amendment, Exh. C, and the Plan Trust Agreement, Exh. D. Defendants now move to dismiss the second amended complaint (Fujitsu defendants' motion to dismiss is at docket number 71; Shepherd Kaplan's motion to dismiss is at docket number 72). The Court held a hearing on the motions on February 1, 2017.

All parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 12, 32, 34.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

The Court considers both motions to dismiss together. Fujitsu argues that (1) the statute of limitations should be 3 years; (2) plaintiffs lack standing to allege claims regarding investment options that they did not choose; (3) plaintiffs fail to plausibly allege claims for breach of fiduciary duty and failure to monitor. Dkt. No. 71. Shepherd Kaplan argues that plaintiffs fail to plausibly allege claims for breach of the duties of loyalty and prudence, and that Shepherd Kaplan cannot be held liable for claims after July 31, 2015. Dkt. No. 72.

The parties attach additional evidence to their briefing, but the Court DENIES the requests for judicial notice. The Court will only consider the material contained with the First Amended Complaint.

### A. Statute of Limitations

Fujitsu first argues that the statute of limitations bars plaintiffs' claims before June 20, 2013. Title 29 U.S.C. § 1113 provides that the statute of limitations for an ERISA breach of fiduciary duty claim is "(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."

Defendants argue that the three-year statute of limitations should apply because "[t]he statute of limitations is triggered by the [plaintiffs'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985). Defendants point to plaintiffs' citation to the Form 5500s in the complaint as evidence of plaintiffs' actual knowledge. However, the complaint alleges that

"Plaintiffs' counsel began an investigation of the Plan in late 2015. Plaintiffs did not review any of the documents cited in this Amended Complaint or any of the information contained therein—including all studies, mutual fund data, and Form 5500s cited herein—until after this investigation had begun." FAC ¶ 145.

■ The Court notes that the "inquiry into plaintiffs' actual knowledge is entirely factual, requiring examination of the record." *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 552 (9th Cir. 1990). At this stage, the Court must take all facts alleged in the complaint as true. The Court declines to make the factual finding that plaintiffs must or could have known of the transaction at issue on the date of the issuance of the relevant Form 5500. Plaintiffs may proceed with the claims under the six-year statute of limitations.

### B. Lack of Standing/Class Action Under Rule 12(b)(1)

■ The Fujitsu defendants' second challenge is to plaintiffs' standing on investment options which they did not invest. A Rule 12(b)(1) motion challenges subject matter jurisdiction, including a plaintiff's standing to sue, and the Court takes the allegations in the complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself. *Thornhill Publ'g Co. v. General Tel. & Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

■ "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Standing under Article III of the Constitution has three basic elements: (1) an "injury in fact," which is neither conjectural nor hypothetical; (2) causation, such that a causal connection between the alleged injury and offensive conduct is established; and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The Court agrees with plaintiffs' citation to *Melendres v. Arpaio*, 784 F.3d 1254, 1261–62 (9th Cir. 2015) which adopted the "class certification approach" to standing in a class action case. "The 'class certification approach,' on the other hand, holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* Here, defendants do not dispute that plaintiffs have standing to bring their own claims under ERISA, or that other individuals in the putative class did invest in the other options. Thus, whether the named plaintiffs are appropriate class representatives will be resolved at the class certification stage.

### C. Breach of Fiduciary Duty and Failure to Monitor Claims as to Fujitsu

■ Finally, the Fujitsu defendants argue that plaintiffs failed to plausibly plead the substance of their claim—that Fujitsu breached its fiduciary duties or that it failed to monitor Shepherd Kaplan. Fujitsu argues that plaintiffs' claims must fail as a matter of law because nothing alleged in the complaint rises to the level of imprudence or a failure of a fiduciary duty.

■ "Section 1104(a)(1) of ERISA imposes three general duties on pension plan fiduciaries. "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 222, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Here, the parties do not dispute that all defendants qualify as fiduciaries. Those three general duties are that fiduciaries must 1) discharge their duties with 'prudence'; 2) diversify investments to 'minimize the risk of large losses'; and 3) act 'solely in the interest of the participants' and for the 'exclusive purpose' of providing benefits to those participants." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1093–94 (9th Cir. 2004).

■ "ERISA also expressly prohibits certain transactions where the potential for abuse is particularly acute." *Id.* at 1094. For example, Section 1106 of ERISA forbids a fiduciary from engaging in a transaction that the fiduciary "knows or should know" is a transaction with a party in interest. 29 U.S.C. § 1106(a). "In order to protect ... the interests of participants in employee benefit plans and their beneficiaries, ERISA also imposes standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans. These standards include duties of loyalty and care, as well as a prohibition on self-dealing." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (internal quotations and citations omitted).

■ Included in these obligations is the "continuing duty to monitor trust investments and remove imprudent ones." *Tibble v. Edison Int'l*, — U.S. —, 135 S.Ct. 1823, 1828, 191 L.Ed.2d 795 (2015). "Implicit within the duty to select and retain fiduciaries is a duty to monitor their performance." *Solis v. Webb*, 931 F.Supp.2d 936, 953 (N.D. Cal. 2012)

Here, plaintiffs allege that Fujitstu breached its fiduciary duties by (1) failing to engage in a prudent process to monitor the Plan's recordkeeping expenses, and failing to investigate and negotiate reasonable recordkeeping fees; (2) failing to monitor all fees being paid to the Plan's service providers such as recordkeeping fees, to ensure the Plan's service providers were not receiving compensation that exceeded the reasonable value of their services; (3) failing to investigate the availability of lower-cost share classes and failing to utilize a process to determine whether the higher-cost share classes were necessary to pay the Plan's recordkeeping or other administrative expenses; (4) failing to implement and employ a process to control the Plan's investment management expenses in the selection and monitoring of the Plan's investment options and in the design and implementation of the Plan's custom target date funds; (5) imprudently designing the Plan's custom target date funds and utilizing inappropriate and speculative investments in the process of implementing the funds; and (6) failing to promptly remove imprudent investments and the target-date funds more broadly when it was apparent that each was imprudent. FAC ¶ 157.

In addition, plaintiffs allege that Fujitsu failed to monitor Shepherd Kaplan by (1) failing to monitor and evaluate the performance of their appointees or to have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and omissions with respect to the Plan; (2) failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein in violation of ERISA; and (3) failing to remove appointees whose performance was inadequate in that they continued to maintain

imprudent, excessively costly, and poorly performing investments within the Plan, or in that they caused the plan to pay excessive administrative fees, all to the detriment of the Plan and Plan participants' retirement savings. FAC ¶ 170.

The Court is not persuaded by defendants' arguments that plaintiffs' allegations must fail as a matter of law. The Court has reviewed the case law and arguments and concludes that plaintiffs' allegations are within the realm of plausible allegations.

### D. Breach of Duties of Prudence and Loyalty Claims as to Shepherd Kaplan

In *Pegram* and *Tibble*, the Supreme Court emphasized that ERISA incorporates common law principles of trusts, including the duty of loyalty and prudence a fiduciary owes to the plan's beneficiaries. *Pegram*, 530 U.S. at 224, 120 S.Ct. 2143; *Tibble*, 135 S.Ct. at 1828. The duty of loyalty requires a trustee to administer the trust solely in the interest of the beneficiaries. *Pegram*, 530 U.S. at 224, 120 S.Ct. 2143. As noted above, the duty of prudence requires that the trustee "invest and manage trust assets as a prudent investor would"; that is, by "exercis[ing] reasonable care, skill, and caution," and by "reevaluat[ing] the trust's investments periodically as conditions change." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016). "Additionally, pursuant to the Restatement (Third) of Trusts, a trustee is to 'incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship.' " *Id.*

As noted above, the Court finds that the facts as alleged are sufficient to establish a plausible claim that defendants breached the duties of prudence and loyalty. Specifically, plaintiffs allege that (1) the Fujitsu/Shepherd Kaplan plan was the most expensive "mega plan" in the country in 2013 and 2014, with expenses three times higher than average for similarly-sized plans with over $1 billion in assets, and (2) recordkeeping expenses were five to ten times higher than fees for similarly-sized plans during the period in question. On these facts alone, the Court can draw a plausible inference that defendants failed to act prudently.

### E. Duration of Shepherd Kaplan Liability

Shepherd Kaplan argues that its liability should conclude when it was terminated as the plan administrator on July 31, 2015. Additionally, Shepherd Kaplan argues that it was not engaged as a plan administrator until 2012, although plaintiffs' complaint alleges that the start date was sometime in 2011. As the complaint alleges that Shepherd Kaplan's , breach continues to harm the Plan, the Court does not find that limiting liability is appropriate at this stage.

## IV. CONCLUSION

The Court finds that plaintiffs have adequately pled the causes of action for breach of fiduciary duty as to both Fujitsu defendants and Shepherd Kaplan. The motions to dismiss are DENIED. Because the Court did not consider materials outside the complaint, the Court DENIES defendants' motion to file a response to plaintiffs' objections to evidence. Dkt. No. 91.

Defendants must answer the complaint within 14 days. The Court sets a further case management conference on May 3, 2017, at 10:00 a.m. in Courtroom 5. The parties must submit a case management statement seven days prior, including a proposed case schedule.

**IT IS SO ORDERED.**