17-2122-cv
*Kim v. Hartford Life Ins. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of September, two thousand eighteen.

PRESENT:   ROBERT D. SACK,
           REENA RAGGI,
           DENNY CHIN,
                   *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MARRY KIM,

                           *Plaintiff-Appellant*,

                           v.                                                17-2122-cv

THE HARTFORD LIFE INSURANCE COMPANY,[*]
                           *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:        ROBERT BACH, New York, New York.

---

[*]        The Clerk of Court is respectfully directed to amend the official caption to conform to the above.

FOR DEFENDANT-APPELLEE:    PATRICK W. BEGOS (Soo Yeon Kim, *on the brief*), Robinson & Cole LLP, Stamford, Connecticut and New York, New York.

Appeal from the United States District Court for the Eastern District of New York (Korman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-appellant Marry Kim appeals the district court's June 15, 2017 judgment, entered pursuant to its June 14, 2017 memorandum and order, granting summary judgment in favor of defendant-appellee The Hartford Life Insurance Company ("Hartford") on Kim's claim challenging Hartford's termination of her disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

From 2003 to 2009, Kim was an employee of the School of Visual Arts (the "School"). The School offers employees a long-term welfare and disability plan (the "Plan") through a group insurance policy (the "Policy") issued by Hartford. The School is the sponsor and administrator of the Plan, and Hartford is the claims fiduciary. The Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." App. 187.

The Policy defines "Mental Illness" as "a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders ["DSM"], published by the American Psychiatric Association," and notes that a mental illness "may be caused by biological factors or result in physical symptoms or manifestations." App. 147. When a claimant is disabled due to "Mental Illness," the maximum duration of disability benefits is 24 months. App. 139-40.

In May 2010, after Kim was diagnosed with bipolar disorder, she began collecting disability benefits under the Plan. Bipolar disorder is listed as a mental disorder in the DSM-IV, the version applicable to Kim's claim.[1] In May 2012, Hartford terminated Kim's benefits based on the 24-month limit for disability due to mental illness. In December 2012, Hartford denied Kim's internal appeal of the termination decision, rejecting her argument that, in essence, bipolar disorder is a biological illness, not a mental illness, and therefore not subject to the 24-month limit.

In April 2015, Kim filed suit under ERISA challenging Hartford's termination of her disability benefits. On June 14, 2017, the district court granted summary judgment in favor of Hartford, concluding that its denial was neither

---

[1] Kim refers to the DSM-IV published in 1994 in her complaint, but to the DSM-IV-TR published in 2000 in her brief on appeal. The parties have not identified any material differences between the versions, and, in any event, Kim does not dispute that bipolar disorder was listed in the applicable version of the DSM at the time she filed her claim.

arbitrary nor capricious and that it did not breach a fiduciary duty.  Judgment was entered the following day.  Kim appeals.

"In an ERISA action, we review the district court's grant of summary judgment based on the administrative record *de novo* and apply the same legal standard as the district court."  *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009).  Where, as here, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we will overturn a denial only if it was arbitrary and capricious, meaning "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (first quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), then quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).  We review the district court's legal conclusions *de novo*.  *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013).

I.     **Termination of Benefits for Mental Illness**

First, Kim argues that Hartford's reliance on the DSM to classify her disability as a "Mental Illness," and thereby deny her continued benefits, was arbitrary and capricious because the DSM is scientifically invalid and out-of-date based on current medical research.  She cites criticism of the DSM by medical professionals, as well as recent scientific research indicating that bipolar disorder is a physical illness rooted in biological causes.

- 4 -

We are not persuaded: in denying Kim's claim, Hartford acted well within its "full discretion and authority" to construe the Policy's terms. App. 187. The Policy defines "Mental Illness" by explicit reference to the current version of the DSM. The applicable version of the DSM, in turn, classifies bipolar disorder -- Kim's sole diagnosis -- as a mental disorder. Hartford lacks authority to modify the terms of the Plan, as Kim concedes, and is obligated to process claims in accordance with the Plan's written terms. *See* 29 U.S.C. § 1102(a)(1) (plan "shall be established and maintained pursuant to a written instrument"); *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (noting "the particular importance of enforcing plan terms as written"). The authority to amend the Plan's written terms lies with the Plan's sponsor, the School, which is not a party in this case. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").

Moreover, even assuming that Kim has raised valid criticisms of the DSM, the DSM remains broadly accepted, and we have already indicated that it is "an objective authority on the subject of mental disorders." *Fuller v. J.P Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005).[2] And as we previously stated, "[i]t may well be that bipolarity is a manifestation of a chemical or electrical reaction in the brain and that it

---

[2]     We decline Kim's request to reconsider our opinion in *Fuller* because "this panel is bound by prior decisions of this court unless and until the precedents established therein are reversed *en banc* or by the Supreme Court." *United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009).

may be said to arise ultimately from a physical cause," but Kim's argument "conflates her disability with its underlying cause." *Id*. Indeed, both the DSM and the Policy recognize that mental illnesses may have underlying physical causes. *See* App. 104 (DSM definition of "mental disorder" notes that "there is much 'physical' in 'mental' disorders and much 'mental' in 'physical' disorders"); App. 147 (Policy definition of "Mental Illness" notes that it "may be caused by biological factors").

Thus, regardless of whether bipolar disorder has a physical cause, Hartford's classification of Kim's disability as a "Mental Illness" and its subsequent denial of her claim for continued benefits -- in reliance on the DSM and in accordance with the explicit terms of the Policy -- was "plainly reasonable." *Fuller*, 423 F.3d at 107.

## II.     Breach of Fiduciary Duty

Next, Kim contends that Hartford violated its fiduciary duty by failing to review the Plan's terms, determine whether the DSM was scientifically valid and up-to-date with current medical research, and advise the School accordingly.

ERISA mandates that fiduciaries, like Hartford, "discharge [their] duties . . . with the care, skill, prudence, and diligence" of a prudent person and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1), (a)(1)(B), (a)(1)(D). In the circumstances presented here, we are not persuaded that Hartford's fiduciary duties required it to investigate whether coverage for mental illnesses under the Plan -- which relies on a widely accepted, objective

medical authority -- conformed with current medical standards. Neither *Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015), which involved an ERISA fiduciary's duty to review trust investments, *id.* at 1827-28, nor the U.S. Department of Labor regulation Kim cites, which offers general guidance on an ERISA fiduciary's responsibilities, *see* 29 C.F.R. § 2509.78–8, imposes such an obligation. Moreover, "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits," let alone benefits that conform to a particular medical standard. *Curtiss-Wright*, 514 U.S. at 78. The district court did not err in rejecting Kim's breach of fiduciary duty claim.

We have considered Kim's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk